IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :
: CRIMINAL ACTION
v. : NO. 03-430
:
: CIVIL ACTION
WILLIAM HARRISON : NO. 09-4271
:
:

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                               APRIL 28, 2010

## I. INTRODUCTION

Before the Court is Petitioner William Harrison's ("Harrison" or "Petitioner") Habeas Corpus Motion, pursuant to 28 U.S.C. § 2255, alleging three grounds for relief: (1) ineffective assistance of his trial counsel, in violation of his Sixth Amendment rights; (2) the Government's Suppression of the Brady/Giglio materials and (3) Harrison's actual innocense. For the reasons that follow, the motion will be denied.

## II. FACTUAL BACKGROUND

This case has been before the Court since July 10, 2003. The Court provided an extensive chronology and procedural history of the case in its February 7, 2006 Memorandum denying Harrison's motion for acquittal and for reconsideration of the denial of his Rule 29 motion, United States v. Harrison, No. 03-430, 2006 WL 287857 (E.D. Pa. Feb. 7, 2006), and will not do so here.

On July 8, 2004, a jury found Petitioner guilty on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

This Court originally sentenced Harrison to 210 months in prison, but, on May 19, 2006, following the discovery of a clerical error in the calculation of the applicable sentencing guideline range, pursuant to Federal Rule of Criminal Procedure 35(a) and with the agreement of the parties, the Court re-sentenced Harrison to 188 months imprisonment. (See Doc. No. 131.) Harrison appealed, and his sentence and conviction were affirmed. United States v. Harrison, No. 06-1970, 293 F. App'x 929, 2008 WL 4368527 (3d Cir. Sept. 26, 2008).

**III. PROCEDURAL HISTORY**

On September 21, 2009, Petitioner filed the timely instant habeas corpus motion, pursuant to 28 U.S.C. § 2255, challenging this Court's sentence and requesting that the Court vacate, set aside, or correct his sentence for ineffective assistance of counsel. (See Pet'r. Mot., doc. no. 152.)

In his habeas motion, Petitioner alleges:

1. Ineffective assistance of counsel of trial counsel, Carlos A. Martir, Esq., in violation of the Sixth Amendment;

2. The Government's suppression of the Brady/Giglio materials;

3. Harrison is actually innocent.

(See Pet'r. Mot. at 6.)

On December 30, 2009, the Government filed a response in opposition to Petitioner's § 2255 motion, to which Petitioner replied on February 9, 2010. (See Gov't Br.; Pet'r. Reply.) Petitioner's motion is now ripe for adjudication.

**III. LEGAL PRINCIPLES**

    A.   <u>Legal Standard</u>

Petitioner has filed this motion <u>pro se</u>. Although <u>pro se</u> pleadings must be construed liberally, a <u>pro se</u> petitioner must be able to prove a "set of facts in support of his claim which would entitle him to relief." <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>see also</u> <u>United States v. Otero</u>, 502 F.3d 331, 334 (applying <u>Haines</u> standard to <u>pro se</u> prisoner's § 2255 motion). A prisoner in custody may move the sentencing Court to "vacate, set aside, or correct" a sentence imposed "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Section 2255 permits habeas relief for an error of law or fact constituting a "fundamental defect which inherently results in a complete miscarriage of justice." <u>United States v. Eakman</u>, 378 F.3d 294, 297 (3d Cir. 2004) (citing <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962)).

Section 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner

is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. Conversely, a court may dismiss a § 2255 motion where the record shows that the movant is not entitled to relief. United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

    B.   Applicable Law

         1. Ineffective Assistance of Counsel

         Under the Sixth Amendment, criminal defendants are entitled to the "'effective assistance of counsel' -- that is, representation that does not fall 'below an objective standard of reasonableness' in light of 'prevailing professional norms.'" Bobby v. Van Hook, --- U.S. ----, 130 S. Ct. 13, 16 (2009) (citing Strickland v. Washington, 466 U.S. 668, 686 (1984)). The Strickland Court developed a two-pronged standard governing ineffective assistance of counsel claims. 466 U.S. at 668.

    First, a petitioner must show that his counsel's performance was deficient. Id. at 687. To demonstrate deficiency, a petitioner must show that his trial counsel's performance "fell below an objective standard of reasonableness," a performance which the court judges based on the case-specific facts and "as of the time of counsel's conduct." Id. at 688, 690 (establishing that failure to raise a meritless claim does not warrant ineffectiveness as counsel).

Second, a petitioner must show that the deficient performance prejudiced the defense. Id. To establish prejudice by a deficient performance, a petitioner must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial or a trial whose result is reliable." Strickland, 466 U.S. at 687. Here, Petitioner must show that "there is a reasonable probability[1] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

2. Brady/Giglio Violation

The Government is required to disclose material exculpatory evidence to a defendant under Brady v. Maryland, 373 U.S. 83 (1963). A new trial is warranted when there is a reasonable probability that disclosure of undisclosed evidence would have altered the outcome of the case. United States v. Bagley, 473 U.S. 667 (1985); Gov't of Virgin Islands v. Martinez, 780 F.2d 302, 306 (3d Cir. 1985). In addition, when there is a factual issue regarding whether a Brady violation occurred, and such claims are not frivolous or palpably incredible, a defendant is entitled to a hearing by the court. Martinez, 780 F.2d at 306 (citing United States v. Alexander, 748 F.2d 185, 193 (4th Cir. 1984); United States v. Dansker, 565 F.2d 1262 (3d Cir. 1977),

---

[1] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 687.

cert. dismissed, 434 U.S. 1052 (1978)).

The Supreme Court extended the Brady rule when it decided Giglio v. United States, 405 U.S. 150 (1972), which requires the Government to also disclose impeachment materials. Under Giglio, "[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility" justifies a new trial irrespective of the good faith or bad faith of the prosecution. Id. at 153-54. The evidence must be material and "[a] new trial is required if the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . ." Id. at 154.

## IV. ANALYSIS

### A. Ineffective Assistance of Counsel Claim

The Court denies Petitioner's ineffective assistance of counsel claim because Petitioner fails to meet either prong of Strickland. Even assuming that any of the examples of ineffective assistance of counsel proffered by Petitioner constitute deficient performance to satisfy prong one of Strickland, Petitioner cannot show that these actions were prejudicial to his defense.

Specifically, Petitioner contends that Martir, his trial counsel, "fail[ed] to confer with Harrison pre-trial." (Pet'r. Mot. at 4.) Petitioner claims that, based on counsel's lack of investigation, he was never afforded the opportunity to

-6-

compose a cogent trial strategy and this resulted in Martir's inability to investigate possible leads and exculpatory evidence. Moreover, Harrison claims that Martir "lacked enthusiasm for the case which was manifested by his failure to investigate." (Id. at 5.)

It is well settled that a defendant who refuses to cooperate with his trial counsel cannot later complain about his counsel's strategic choices or failure to present certain defenses. See Cox v. Ayers, 588 F.3d 1038, 1052 (9th Cir. 2009) (defendant who claimed that he would create a courtroom disturbance if counsel raised a certain defense cannot complain about counsel's failure to raise it); Hicks v. Collins, 384 F.3d 204, 215 (6th Cir. 2004) (defendant who refused to cooperate in defense counsel's efforts to present a defense of lack of mental state due to cocaine intoxication did not receive ineffective assistance of counsel).

Here, it is undisputed that Harrison refused to cooperate – or even speak – with Mr. Martir prior to trial. Indeed, the Court found "the defendant refus[ed] to communicate with counsel from the time of his indictment through September 2004, two months after the trial was completed." Harrison, 2006 WL 287857, at *9. This uncooperative conduct started with Harrison's objection to the replacement of his first trial counsel with Mr. Martir shortly after his indictment. Later,

Harrison filed numerous pro se motions prior to and after trial. Moreover, Harrison consistently presented arguments that defense counsel advised were unwise and damaging to his cause, including Harrison's repeated challenge to this Court's jurisdiction over him. Harrison fails to explain how Mr. Martir could have possibly investigated this case, as Harrison wished, when Harrison refused to even speak with Mr. Martir before and during the trial. If Martir failed to communicate with Harrison, Harrison has no one to blame but himself.

Even considering Harrison's claim on the merits, applying the principles set forth in Strickland, Harrison has failed to show that the result of his trial would have been different, absent defense counsel's alleged errors. In fact, because the evidence against Harrison was overwhelming, the result of the trial would not likely have been different, absent the claimed errors. See Loliscio v. Goord, 263 F.3d 178, 196 (2d Cir. 2001) (affirming denial of habeas corpus motion and noting "the considerable amount of circumstantial evidence of petitioner's guilt presented at trial"); Herman v. Butterworth, 929 F.2d 623, 627 (11th Cir. 1991); accord Clayton v. Gibson, 199 F.3d 1162, 1178 (10th Cir. 1999) (rejecting claim of prejudice even in face of defense counsel's errors because evidence was overwhelming); Tokar v. Bowersox, 198 F.3d 1039, 1049 (8th Cir. 1999) (same); Strouse v. Leonardo, 928 F.2d 548, 556 (2d Cir.

1991) (same); accord Strickland, 466 U.S. at 696.

At trial,[2] the Government offered the testimony of Philadelphia Police Officer Bill Erwin who personally observed an individual shoot a gun, chased that individual, and determined that it was Harrison. Not only was Harrison the only individual on the street, but at the time of his apprehension he was still carrying the distinctive orange bag he was holding when he discharged his illegal weapon. Officer Erwin's testimony was confirmed by the evidence of an independent civilian, Ms. Santa Conix, who saw a man with an orange bag run past her window immediately after she was awakened by gun shots. This witness saw the man discard something into a vacant lot. (See Trial Tr. July 7, 2004 at 73-75.) The discarded item made the sound of metal on metal when it landed. In a subsequent search, the

---

[2] The Court has already summarized the Government's strong evidence in this case as follows,

> [T]he defense has not made a showing that the evidence presented would probably lead to an acquittal. At trial, the government put forward testimony from twelve witnesses to establish its proposed factual scenario. These witnesses included four police officers present at the scene on the morning of the incident, the detective who processed the crime scene, a woman who heard the shots and called 911, a 911 dispatcher, a woman who heard the shots and whose car was shot, and four expert witnesses who established the bullets at the scene came from the recovered gun, the origin of the recovered gun, and that the defendant had prior convictions. Based on this evidence, a unanimous jury returned a verdict of guilty.

Harrison, 2006 WL 287857, at *9.

police recovered a gun from a truck bed in the vacant lot identified by Ms. Conix.

In the instant motion, which repeats arguments made in his previous motions for acquittal and a new trial, Harrison makes only minor criticisms of the defense Mr. Martir presented. His only claim is that Mr. Martir did not point out minor inconsistencies between the time listed in police paperwork and the times identified by witnesses or inconsistencies in the description of Harrison's clothes. Again, he fails to show what exculpatory evidence would have been uncovered by further investigation.

In reality, Mr. Martir raised much more substantial issues on behalf of Harrison such as: (a) the police did not have fingerprints or gunpowder residue analysis to tie Harrison to the gun; (b) the police had to chase Harrison through the streets at night and may not have gotten a good look at Harrison; (c) at the time of the arrest, Harrison told police a colorable story about why he was there that did not involve his possession of the gun; and (d) the police had returned the distinctive orange bag to Harrison's girlfriend and could not produce it at trial. (See, e.g., Trial Tr. July 7, 2004 at 40-41.)  Although they were ably presented, the jury rejected these defenses.

Harrison cannot show how any further investigation, evidentiary objections or cross-examination by his counsel would

so have altered the course of his trial that the jury would have acquitted him. Indeed, given the many significant obstacles Harrison presented to an effective defense, Mr. Martir performed well, presenting a coherent defense that the Government failed to prove that it was Harrison that had the gun.

Contrary to Harrison's assertions, the fact that the witnesses' testimony may have differed by a few minutes about the precise time of his arrest or the description of his clothing is not a sufficient reason to grant him a new trial. In fact, Harrison was allowed a full and fair opportunity to litigate this precise issue in his motion for a new trial, including numerous continuances, extensive briefing, and a lengthy evidentiary hearing. The Court will not entertain Harrison's attempts to use his § 2255 motion as a vehicle for relitigating portions of the district court's previous decision on his Rule 33 motion. See United States v. Derewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993) ("Many cases have held that Section 2255 generally 'may not be employed to relitigate questions which were raised and considered on direct appeal.'") (quoting Barton v. United States, 791 F.2d 265, 267 (2d Cir. 1986) (collecting cases)). Petitioner points to nothing to undermine the Court's confidence in its previous decision.

B. Brady/Giglio Violation Claim

Harrison claims that the Government failed to turn over

exculpatory evidence in that it did not provide him with an alleged CAD (computer aided dispatch) report relating to and the recording of an alleged 9-1-1 call made by Juanita Seabourne, a government witness who owned the car that Harrison shot with the gun he was later charged with possessing. Harrison argues that the alleged Seabourne recording, and related CAD report, would have exposed time frame inconsistencies which, in turn, would have lead to the conclusion that he was already detained when the crime was being committed.

Brady holds that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution." Id. at 87. Evidence is material for purposes of Brady where a reasonable probability exists that the outcome would have been different had the evidence been disclosed. Riley v. Taylor, 277 F.3d 261, 301 (3d Cir. 2001) (en banc).

Harrison's argument that the alleged Seabourne 9-1-1 call and related CAD report would have been exculpatory is unpersuasive. There is simply no evidence of record that the alleged 9-1-1 call or report contain any exculpatory evidence. With respect to the 9-1-1 call, according to her testimony at trial, Seabourne did not make a 9-1-1 call regarding the shots she heard. She testified that after hearing gunshots, she laid

in her bed until the gunshots stopped. (See Trial Tr. July 7, 2004 at 135.) After the gunshots stopped, Seabourne looked out her front door and saw the police were already on the scene several minutes after she heard the shots. (Id. at 136.) Moreover, with respect to what the Government avers is the only CAD report in its possession, the Government produced it to Harrison prior to trial and used it as a trial exhibit. (See Gov't Ex. 7B; Trial Tr. July 7, 2004 at 140.)

The parties agree that another 9-1-1 call, made by someone other than Ms. Conix, was accidently played at trial during Ms. Conix's direct examination.[3] (See Pet'r. Mot. at 11 n.4; accord Trial Tr. July 7, 2004 at 79-80, Gov't Br. at 8.) Notably, Harrison cannot articulate anything persuasive about the call's alleged exculpatory nature. In his motion, Harrison argues that if the mistakenly played call indeed was made by Seabourne, and if he had the CAD report for that call, he may be able to show that it did not match up precisely with the times listed in the CAD report for Ms. Conix's call or line up with the witness testimony at trial. Even crediting Harrison's unsupported theory, it would only produce minor inconsistencies which would not undermine his conviction. Hence, there has been

---

[3] Harrison contends this was 9-1-1 call was made by Seabourne. However, the Government does not agree and contests the relevance of this call which the Court instructed the jury to disregard. (See Trial Tr. July 7, 2004 at 80-81.)

no showing of materiality under Brady. See Riley, 277 F.3d at 301 (materiality requires showing of a reasonable probability that the outcome would have been different had the evidence been disclosed).

   C. Actual Innocense

Claiming actual innocence, Harrison simply attempts to reargue the facts of his defense which both the jury, this Court and the Court of Appeals previously rejected.[4] A motion pursuant to § 2255 is not the proper forum to attempt to reargue the facts of the Petitioner's case, which is all Harrison attempts to do here. Rather than argue his actual innocence, Petitioner simply reiterates his previous claims that there are inconsistencies in the Government's evidence that give rise to a defense. Such an argument is not a basis for relief pursuant to § 2255.

**IV. CONCLUSION**

For the aforementioned reasons, Petitioner's § 2255 habeas petition will be denied on all grounds without a hearing. Moreover, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c) because Petitioner has not made a substantial showing of the denial of a constitutional right. See United

---

[4] Harrison appealed his conviction, arguing these precise claims which the Court of Appeals rejected. See Harrison, 293 F. App'x 929. Because he had a full and fair opportunity to litigate these issues on appeal, his motion is barred. Riascos-Prado v. United States, 66 F.3d 30, 33-34 (2d Cir. 1995); see also Schlup v. Delo, 513 U.S. 298, 318 (1995) ("[A] habeas court may not ordinarily reach the merits of successive claims . . . absent a showing of cause and prejudice.") (citations and footnote omitted).

States v. Cepero, 224 F.3d 256, 267-68 (3d Cir. 2008).

An appropriate order follows.